**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



FILED

AUG 2 5 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

FLAME S.A.,

              Plaintiff,

v.

VIKTOR BARANSKIY; INDUSTRIAL
CARRIERS, INC.; VISTA SHIPPING LTD.;
FREIGHT BULK PTE. LTD.; COLUMBUS
MARITIME CO. LTD.; LILIYA DARIY;
PALMIRA HOLDING N.V.; BARVIK
GROUP B.V.; HACHI HOLDING LTD.;
RAINBOW CONSULTANTS CO.; ALBARA
DI MEZZANA SHIPPING CO.; FREIGHT
BULK LTD.; PRIVILEGE WIN COMPANY
LTD.; EXPRESS FORTUNE LIMITED; OIL
AND BULK TRADING CO.; WALKTOWN
NETWORK LLP; VISTA SHIPPING LTD.;
ALPEN SHIPMANAGEMENT CO.;
PALMIRA ENTERPRISES S.A.; VISTA
MARITIME INTERNATIONAL LTD.;
COLUMBUS MARITIME SHIPPING
CORPORATION; OCEAN STEVEDORING
COMPANY; ALPINE INVESTMENTS
GROUP CORP.; RECHMORTRANS LTD.
COSTA PALMA NAVIGATION INC.;
SAIWEI MARU SHIPPING CO.; SWEET
WIND ENTERPRISES LTD.; MOON
SHADOW MARINE CO.; MARINE
TRAVELER CO.; MYSTIQUE VOYAGEUR
SHIPPING LTD.; SHINE CRISTAL
NAVIGATION CO.; SERENA SEA
NAVIGATION CO.; LUCKY
CONSTELLATION LTD.; EVENING STAR
SHIPPING CO.; OCEAN SOUL TRADE CO.;
POLAR GALAXY CO.; CARAVELLA
SHIPPING LTD.; ALBA NAVIGARE CO.;
SONIC STAR NAVIGATION CO.; ORBIS
MARITIME CO.; SEA STAR HOLDING
LTD.; VELAS ESCARLETA LTD.; ROYAL
SEA ENTERPRISES LTD.; PORTA DE
MARA SHIPPING CO.; STELLA POLARE

Civil Action No. 2:14cv438

LTD.; SEA LOGISTIC INTERNATIONAL
LTD.; TRANSINTERCONTINENTAL
CORP.; TRISTAR ENTERPRISES LTD.;
CONSTELLATION MARITIME GROUP
LTD.; FAST DELIVERY MARITIME LTD.;
INTERNATIONAL MARITIME LTD.;
MARITIME WORLDWIDE SHIPPING
LTD.; ATLANTIC MARINE DIVISION
CORP.; PRIME STAR HOLDINGS INC.;
TRANS-SERVICE LTD.; POLYCENTER
LLP; ATLANTA TRADING CO.; SMART
TRADING LLP; HUAN HWA TRADING
LTD.; SEA TRAFFIC SHIPPING CO.;
BLACK SEA SHIPPING INDEX LLP
GENERAL CARGO SURVEY LLP;
DAREDECK LIMITED; MARITIME
SERVICES COMPANY LTD.; SEA BREEZE
NAVIGATION INC.: BLACK SEA AZOV
SERVICES; and CORAL SEA SPIRIT, INC.

Defendants.

## COMPLAINT

Plaintiff, FLAME S.A. (hereinafter "Flame"), by and through its attorneys, Crenshaw,

Ware & Martin, P.L.C. and Blank Rome LLP , files its Complaint against Defendants Viktor

Baranskiy (hereinafter "Baranskiy"), Industrial Carriers, Inc. (hereinafter "ICI"), Vista Shipping

Ltd. (hereinafter "Vista"), Freight Bulk Pte. Ltd. (hereinafter "FBP"), Columbus Maritime Co.

Ltd., Lilya Dariy, and Palmira Holding N.V.; Barvik Group B.V.; Hachi Holding Ltd.; Rainbow

Consultants Co.; Albara Di Mezzana Shipping Co.; Freight Bulk Ltd.; Privilege Win Company

Ltd.; Express Fortune Limited; Oil and Bulk Trading Co.; Walktown Network LLP; Vista

Shipping Ltd.; Alpen Shipmanagement Co.; Palmira Enterprises S.A.; Vista Maritime

International Ltd.; Columbus Maritime Shipping Corporation; Ocean Stevedoring Company;

Alpine Investments Group Corp.; Rechmortrans Ltd. Costa Palma Navigation Inc.; Saiwei Maru

Shipping Co.; Sweet Wind Enterprises Ltd.; Moon Shadow Marine Co.; Marine Traveler Co.;

Mystique Voyageur Shipping Ltd.; Shine Cristal Navigation Co.; Serena Sea Navigation Co.; Lucky Constellation Ltd.; Evening Star Shipping Co.; Ocean Soul Trade Co.; Polar Galaxy Co.; Caravella Shipping Ltd.; Alba Navigare Co.; Sonic Star Navigation Co.; Orbis Maritime Co.; Sea Star Holding Ltd.; Velas Escarleta Ltd.; Royal Sea Enterprises Ltd.; Porta De Mara Shipping Co.; Stella Polare Ltd.; Sea Logistic International Ltd.; Transintercontinental Corp.; Tristar Enterprises Ltd.; Constellation Maritime Group Ltd.; Fast Delivery Maritime Ltd.; International Maritime Ltd.; Maritime Worldwide Shipping Ltd.; Atlantic Marine Division Corp.; Prime Star Holdings Inc.; Trans-Service Ltd.; Polycenter LLP; Atlanta Trading Co.; Smart Trading LLP; Huan Hwa Trading Ltd.; Sea Traffic Shipping Co.; Black Sea Shipping Index LLP; General Cargo Survey LLP; Daredeck Limited; Maritime Services Company Ltd.; Sea Breeze Navigation Inc.; Black Sea Azov Services; and Coral Sea Spirit, Inc. (hereinafter the "Palmira Group") (collectively "Defendants," unless otherwise specified), alleges:

### Preliminary Statement

1.      In the fall of 2008 the freight rates in the shipping market, and in particular the bulker market, crashed. ICI was, financially, on the wrong side of the crash and took heavy losses. ICI, however, never felt those losses, because, upon information and belief, it transferred substantial amounts of its cash and assets to Baranskiy, Vista, and the Palmira Group.

2.      This action involves the recovery of a foreign judgment in the sum of USD $19,907,118.36 (hereinafter referred to as the "Judgment"), entered in favor of the plaintiff, Flame, as against the defendant, ICI.

3.      On December 22, 2010, Flame commenced an action against ICI in the United States District Court for the Southern District of New York, seeking recognition of the foreign judgment invoking the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, pursuant to the Uniform Foreign Money-Judgments

Recognition Act. The Judgment was recognized by the United States District Court for the Southern District of New York on September 14, 2011.

4. The Judgment was entered in the Southern District of New York on October 4, 2011.

5. The Judgment was registered in the Eastern District of Virginia on October 11, 2013.

6. While it was insolvent, ICI fraudulently transferred assets to Vista—and, eventually, the Palmira Group—(1) to capitalize Vista as a successor company, and, upon information and belief, (2) to hinder, delay, or defraud its creditors, including Flame.

7. The Palmira Group operates as a single enterprise under the direction and control of a single dominant shareholder, Viktor Baranskiy.

8. Further, as will also be demonstrated below, Vista and the Palmira Group were formed and funded from the fraudulent bulk transfer of cash from ICI.

### Jurisdiction and Venue

9. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, in that it involves a claim for the enforcement of a maritime judgment, the underlying basis of which was a claim for breach of four maritime contracts called Forward Freight Swap Agreements. The Court also has supplemental and/or ancillary jurisdiction over any and all non-maritime claims, if any.

10. Baranskiy and one or more of the other Defendants is currently present in the Eastern District of Virginia.

## The Parties

11.     At all times relevant hereto, Flame was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of Switzerland, with an office and principal place of business in Switzerland.

12.     At all times material hereto, defendant ICI was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

13.     ICI was, at all times relevant herein, registered to do business in New York and was a party in multiple lawsuits filed in the Southern District of New York.

14.     Flame has registered a foreign maritime judgment against defendant ICI in this District.

15.     At all times material hereto, defendant Vista was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

16.     Vista was, at all times relevant herein, registered to do business in the State of New York.

17.     Vista was formerly part of the Vista Group of companies, which consisted of a number of companies that acted in concert as one entity and were owned, operated, controlled, and dominated by Viktor Baranskiy.

18.     At all times material hereto, defendant FBP was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country, and is now part of the Palmira Group of companies.

19.     Vista and FBP are the beneficial and registered owners, respectively, of the M/V CAPE VIEWER. The M/V CAPE VIEWER is now within the District of Virginia, following the Court's attachment of the Vessel on November 22, 2013.

20.     In 2011 the Vista Group of companies became known as the Palmira Group of companies, which consists of approximately sixty companies that, upon information and belief, act in concert as a single entity, and are owned, operated, controlled, and dominated by Viktor Baranskiy.

21.     At all times material hereto, defendant Viktor Baranskiy was, and now is, a foreign citizen and resident of the Ukraine.

22.     At all relevant times, Viktor Baranskiy is and was an 18% shareholder of Defendant ICI. His father, Sergei Baranskiy, is and was a 33% shareholder of ICI.

23.     Viktor Baranskiy is the single dominant shareholder of Vista, FBP, and the rest of the Palmira Group of companies.

24.     At all times material hereto, defendant Liliya Dariy was, and now is, a foreign citizen.

25.     Columbus Maritime Co. Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

26.     Palmira Holding N.V. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

27.     Barvik Group B.V. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

28.     Hachi Holding Ltd. is a foreign corporation or other entity organized under the

laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and Defendant Lilya Dariy, and was and is an alter ego of all other named defendants.

29.     Rainbow Consultants Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

30.     Albara Di Mezzana Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

31.     Freight Bulk Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

32.     Privilege Win Company Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

33.     Express Fortune Limited is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

34.     Oil and Bulk Trading Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

35. Walktown Network LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

36. Vista Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

37. Alpen Shipmanagement Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

38. Palmira Enterprises S.A. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

39. Vista Maritime International Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

40. Columbus Maritime Shipping Corporation is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

41. Ocean Stevedoring Company is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and

dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

42. Alpine Investments Group Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

43. Rechmortrans Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

44. Costa Palma Navigation Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

45. Saiwei Maru Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

46. Sweet Wind Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

47. Moon Shadow Marine Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

48.     Marine Traveler Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

49.     Mystique Voyageur Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

50.     Shine Cristal Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

51.     Serena Sea Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

52.     Lucky Constellation Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

53.     Evening Star Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

54.     Ocean Soul Trade Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

55.     Polar Galaxy Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

56.     Caravella Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

57.     Alba Navigare Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

58.     Sonic Star Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

59.     Orbis Maritime Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

60.     Sea Star Holding Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

61.     Velas Escarleta Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

62.     Royal Sea Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

63.     Porta De Mara Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

64.     Stella Polare Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

65.     Sea Logistic International Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

66.     Transintercontinental Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

67.     Tristar Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

68.     Constellation Maritime Group Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

69.     Freight Bulk Pte. Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

70.     Fast Delivery Maritime Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

71.     International Maritime Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

72.     Maritime Worldwide Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

73.     Atlantic Marine Division Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

74.     Prime Star Holdings Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

75.     Trans-service Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

76.     Polycenter LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

77.     Atlanta Trading Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

78.     Smart Trading LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

79.     Huan Hwa Trading Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

80.     Sea Traffic Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

81.     Black Sea Shipping Index LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

82.     General Cargo Survey LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

83.     Daredeck Limited is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

84.     Maritime Services Company Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

85.     Sea Breeze Navigation Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy and was and is an alter ego of all other named defendants.

## Background Facts To The Instant Litigation

86.     Defendants ICI, Vista, FBP, and the entire Palmira Group, under the direction and control of Defendant Viktor Baranskiy, have and continue to disregard corporate form. Accordingly, the Defendants are, and should be considered, alter egos of each other and liable for the debts and obligations of one another.

87.     At all times herein mentioned, the M/V CAPE VIEWER was, and now is, a vessel beneficially owned by Vista. FBP, an alter ego of Vista and the other entities of the Palmira Group, is listed as the Registered Owner of the M/V CAPE VIEWER. However, FBP purchased the M/V CAPE VIEWER with funds that belonged to Vista and/or ICI.

88.     Vista, and later FBP, was capitalized with funds and other assets that were fraudulently siphoned out of ICI, while ICI was insolvent. ICI's fraudulent transfers of assets were made to hinder, delay, or defraud creditors, including Flame.

89.     At all times herein mentioned Vista was the beneficial owner of the M/V CAPE VIEWER, operating, managing, controlling, and manipulating the vessel for its own use under the direction of Viktor Baranskiy, and with the assistance of former key employees of ICI – namely, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov, and Daniel Su.

## A.     The London Proceedings

90.     As part of its trading activities, Flame and ICI entered into four (4) Forward Freight (Swap) Agreements (hereinafter referred to as the "Agreements") dated March 12, 2008, May 19, 2008, August 14, 2008, and August 29, 2008.

91.     In mid to late September 2008, freight rates in the shipping market began to crash. Consequently, ICI's financial obligations increased dramatically.

92.     ICI defaulted and breached the Agreements. In particular, on or about October 15, 2008, defendant ICI applied to the Piraeus Multimember Court of First Instance (Ex-Parte

Jurisdiction—Admiralty Division, Piraeus, Greece) for the granting of a petition for bankruptcy and for the appointment of a Reporting Judge and a Receiver in respect of its affairs.

93.     The October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) of the Agreements in that ICI had, by that application, "*[sought] the appointment of a . . . receiver, trustee, custodian or other similar official for it or for all or substantially all its assets.*"

94.     Pursuant to section 6(a) of the Agreements, the October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) and gave rise to a right of Early Termination of the Agreements.

95.     Clause 9(f) of the Agreements provides for Automatic Early Termination to apply to both parties, therefore, the Agreements were automatically terminated by reason of ICI's October 15, 2008 bankruptcy application.

96.     In or about November 2010, Flame commenced an action in London, England against ICI to recover the amounts due and owing under the Agreements.

97.     On December 13, 2010, the High Court of Justice, Queen's Bench Division, Commercial Court Registry entered a judgment for Flame as against ICI and ordered ICI to pay Flame a total of USD $19,907,118.36 (hereinafter referred to as the "Judgment"). Exhibit 1 is a true and correct copy of the Judgment for Claimant (Plaintiff herein) issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry, London, England.

98.     Under the Order issued by the High Court of Justice, Queens Bench Division, Commercial Court Registry, defendant ICI is obliged to pay Flame $19,907,118.36, excluding post-judgment interest and attorney's fees.

99.     The Order issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry is a final Judgment, conclusive and enforceable in England.

100.    The $19,907,118.36 Judgment against defendant ICI in the High Court of Justice, Queen's Bench Division, Commercial Court Registry remains unpaid to date, though payment has been duly demanded.

101.    Defendant ICI's October 15, 2008 bankruptcy application was ultimately rejected on the basis that the Centre of Main Interest was not in Greece. Accordingly, ICI is still actively registered company in the Marshall Islands.

**B.      Litigation in the Southern District of New York.**

102.    Flame, having obtained a Judgment against defendant ICI in the High Court of Justice, Queen's Bench Division, Commercial Court Registry, obtained confirmation of the Judgment in the United States District Court for the Southern District of New York.

103.    By Order dated September 14, 2011, granted Flame's motion for recognition of a foreign judgment pursuant to Fed. R. Civ. P. 55(b)(2).

104.    A judgment confirming and recognizing the foreign Judgment issued by the High Court of Justice in London, England in favor of Flame and against ICI in the amount of $19,907,118.36 was entered the United States District Court for the Southern District of New York on October 4, 2011. A true and correct copy of the October 4, 2011 judgment is Exhibit 2.

**C.      Litigation in the Eastern District of Virginia.**

105.    A copy of the October 4, 2011 judgment was registered in the United States District Court Eastern District of Virginia on October 17, 2013. A true and correct copy of the October 17, 2013 registration is Exhibit 3.

106.    Thereafter, on November 22, 2014, Flame filed a Verified Complaint in Admiralty in Civil Action No. 2:13-cv-658.

107. At the time of filing, the M/V CAPE VIEWER was then within the Port of Norfolk, Virginia and within the Court's jurisdiction.

108. Flame's Verified Complaint sought, among other things, the attachment and judicial sale of M/V CAPE VIEWER to partially satisfy its Judgment against Defendant ICI.

109. A trial of the action is scheduled to commence on August 26, 2014.

### The Instant Action

110. This action is brought, in the first instance, to obtain enforcement of a foreign money judgment recognized in the Southern District of New York, in favor of Flame and against Defendant ICI.

111. This action is also brought to demonstrate that ICI is an alter ego of Vista and the rest of the Palmira Group because ICI fraudulently diverted cash and other assets to Vista, while ICI was insolvent, without consideration or corporate formalities, with intent to hinder, delay, or defraud its creditors, including Flame.

112. This action is also brought to demonstrate that the defendants are alter egos of each another, and are therefore liable for the Judgment debt of ICI to Flame.

113. The Palmira Group Defendants, including Vista and FBP, have a commonality of operation and control, and routinely transfer funds between each other, without consideration and without observation of corporate formalities such as board resolutions, such that entities within the Palmira Group are alter egos of the others.

114. The dominant shareholder of Defendants ICI, Vista, FBP and the Palmira Group of companies, Viktor Baranskiy, along with key managerial employees, including Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su, routinely disregard the corporate form of the Defendants herein are should, therefore, be considered alter egos of each other, and thus liable for the debts and obligations of one another.

115.    Defendants disregard their corporate forms, and do not deal each other at arm's length.

116.    Defendants possess, transfer, and/or hold funds of, or for the benefit of, one another, and make and receive payments for, and on behalf of, the other Defendants, pooling the resources without regard to corporate separateness, and without entering into an arm's-length negotiated contract to provide such services. As such, each of the Defendants is a proper party to be identified in the process of attachment to be issued herein.

117.    Defendants also possess, transfer, and/or hold funds of, or for the personal benefit and use of, Viktor Baranskiy.

118.    In support of these fraud and alter ego allegations, Flame further alleges the following:

> a) The officers, directors, operators and owners of each of the Defendants are the same and/or are substantially the same. In particular, Viktor Baranskiy is a controlling shareholder, director and/or officer of Defendants ICI, Vista, FBP and the Palmira Group.
>
> b) Viktor Baranskiy directly or indirectly owns the Defendants, in whole or in part, and ultimately exercises complete dominion and control over all the Defendants, whether or not he owns a controlling share in any particular Defendant.
>
> c) Upon information and belief, Michael Ivanov is a director and/or officer in the chartering department of Defendants ICI, Vista, FBP, Columbus Maritime Co. Ltd., and the Palmira Group.
>
> d) Upon information and belief, Vladimir Ivanov is a director and/or officer in the operations department of Defendants ICI, Vista, FBP and the Palmira Group.

e) Upon information and belief, Vladimir Yudaev is a director and/or officer in the operations department of ICI and a shareholder and director and/or officer in the chartering department of Defendants Vista, FBP and the Palmira Group.

f) ICI, as a corporate practice, routinely disregarded corporate formalities. Audited financial statements demonstrate that ICI owned and controlled the following companies for the sole purpose of being a depository for money due and owing ICI:

     i. Weaver Investment, Inc.

     ii. Selene Ship Management S.A.

     iii. Auster Marine Co.

     iv. Treselle Navigation Ltd.

     v. Cardinia Management Co.

     vi. Tempest Service Inc.

g) It is not the general practice in the maritime community, or in any other business, for independent companies to make or receive large payments on behalf of other independent companies, yet such payments were, and are, made and received regularly by the six affiliated companies for ICI. Indeed, the sole activity of these six companies was to maintain bank accounts for the sole purpose to receive funds for ICI.

h) At all relevant times herein, ICI created and operated an incestuous group of companies with the sole purpose of ICI avoiding its debts by defrauding creditors.

i) The practice of directing payments to its wholly owned subsidiaries was utilized by ICI to evade creditors.

j)  ICI issued invoices requesting payments to these corporate entities. The most common beneficiary was Weaver Investment, Inc. Invoices sent to Flame requested payment to ICI to an account at HSBC Bank in Piraeus in the name of Weaver Investment Inc., Selene Ship Management S.A., Auster Marine Co., and Treselle Navigation Ltd.

k)  Payments sent or received on behalf of another independent company without due consideration, and without written agreements, are suggestive of a relationship that is not at arm's length. This fraudulent activity, which occurred between 2006 and 2008, was pervasive.

l)  On June 24, 2008, Vista was incorporated in the British Virgin Islands with the primary purpose to receive cash and asset transfers from ICI.

m)  On June 30, 2008, ICI's Interim Semi-Annual Financial Statements for January 1 – June 30, 2008 indicated a cash and cash equivalent amount of US $39,236,853.00, and a profit of US $80,627,022.00.

n)  On October 15, 2008, defendant ICI, a mere six (6) weeks after recording cash on hand of nearly $40,000,000, applied to the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction—Admiralty Division) for the granting of a petition for bankruptcy. At the time of the bankruptcy filing, ICC's financial position indicated a cash and cash equivalent amount of €311,377.06 and US $2,733,854.52, with total losses of US $15,504,000.

o)  Using cash and other assets it illegally received from ICI, Vista began operating ships, with voyages commencing in October 2008.

p) In or about October 2008, while ICI was insolvent, ICI fraudulently transferred to Vista the right to charter the M/V HARMONY FALCON, along with the right to collect freight payments and other benefits, and Vista earned millions of dollars as a result of ICI's fraudulent transfer.

q) On December 18, 2012, the M/V CAPE VIEWER was purchased by Vista, under the name of FBP, unencumbered by a mortgage. Buying a vessel unencumbered—i.e., without a mortgage—is not simply rare in the shipping industry, it is virtually unheard of.

r) The M/V CAPE VIEWER was listed as part of Vista's fleet on Vista's website. Vista has stopped operating a website since this lawsuit began.

s) FBP, an alter ego of Vista and the Palmira Group, is listed as the Registered Owner of the M/V CAPE VIEWER. FBP purchased the M/V CAPE VIEWER with Vista's funds, which were transferred first to Defendant Sea Traffic Shipping Co., without consideration and without regard to corporate formalities, and then to FBP. Sea Traffic Shipping Co. and FBP then entered a sham loan agreement, before FBP was incorporated, and a sham "attachment" containing the terms of repayment was created by Viktor Baranskiy on March 24, 2014, long after the date of the loan agreement, and after this lawsuit was initiated. Upon information and belief, after this lawsuit was initiated, Baranskiy directed his employees to draft repayment terms for the loan, and to make a payment on the loan.

t) Despite FBP being the registered owner of the M/V CAPE VIEWER, Vista is the beneficial owner of the M/V CAPE VIEWER, and the vessel is operated, managed, controlled and manipulated by Viktor Baranskiy.

u) FBP is owned by Defendant Freight Bulk Ltd., which is, in turn, owned by Hachi Holding Ltd. Before March 31, 2014, Hachi Holding Ltd. was owned by Palmira Holding N.V., and owns assets in excess of $18 million. On March 31, 2014, Viktor Baranskiy fraudulently conveyed Hachi Holding Ltd. to his mother, Defendant Lilya Dariy, for €1 (one euro). Upon information and belief, Viktor Baranskiy conveyed Hachi Holding Ltd. to his mother in order to hinder, delay, or defraud Flame.

v) FBP makes no independent business decisions controlling its asset, the M/V CAPE VIEWER. All such decisions are made by Viktor Baranskiy, or by one of Viktor Baranskiy's managerial employees, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su.

w) The law firm of MFB (formerly known as More Fisher Brown), located in London, appeared in London to respond to the proceedings commenced against ICI in London. Shortly thereafter, MFB also represented Vista in purchasing numerous vessels.

x) Vessels owned and operated by Viktor Baranskiy, whether under the name ICI, Vista, FBP, or one of the other Palmira Group Defendants, employ subsidiaries and other related entities of ICI, Vista, or FBP, namely, Tech Projects, MKTM Ltd. and Columbus Maritime Co. Ltd. to manage their respective vessels. Tech Projects, MKTM Ltd and Columbus Maritime Co. Ltd. employ the same key employees as defendants ICI, Vista, FBP and the Palmira Group. Further, MKTM Ltd. shares the same address as ICI/Baranskiy.

y) Upon information and belief, Viktor Baranskiy is the beneficial owner of, and maintains the same address as, ICI, Vista, FBP, MKTM, and the rest of the Palmira Group.

z) Viktor Baranskiy was an 18% shareholder in ICI, which made him the third largest shareholder in ICI, resulting in him having a controlling interest in ICI under applicable law.

aa) Viktor Baranskiy controls Vista, FBP, and the Palmira Group and treats their bank accounts as his own personal accounts.

bb) Shortly before ICI filed for bankruptcy, and while it was insolvent, ICI made several large unexplained transfers of cash. In or around October 2008, Vista has unexplained cash in the amount of approximately $5,000,0000 added to its accounts, such that it was able to quickly capitalize and begin operating numerous ship charters, during one of the worst financial downturns the shipping industry has ever seen.

cc) Viktor Baranskiy testified that he has access to more than $100 million USD of cash. Vista is not a success story, but rather a story of how they are the successor to ICI.

dd) Through Viktor Baranskiy, Vista succeeded ICI, taking control of ICI's cash, vessel charters, assets, key employees, clients, and long-term shipping contracts. Vista is ICI.

ee) Vista was capitalized by entities owned, operated and controlled by the founders of ICI using funds earned by ICI.

ff)  According to testimony received from Vista's Chief Financial Officer, Katerina Bobrenko, who is also the Chief Financial Officer of the entire Palmira Group, FBP, Vista, and the rest of the Palmira Group regularly convert monies earned individually into cash, and then comingle the cash in a single cash box.

gg)  The Defendants acted, and still act, as one business enterprise dominated and controlled by the ICI shareholders and the Baranskiy family.

### ICI's Audited Financial Statements

119.  Between June 2008 and October 2008, ICI, upon information and belief, siphoned tens of millions of dollars of cash and other assets.

120.  Among other things, ICI's audited financial statements demonstrate that:

a)  ICI's financial statements show that before June 2008, it was a profitable company that appeared to be in good financial condition.

b)  The company's balance sheet shows that by June 30, 2008, ICI was insolvent. Although ICI had more than $100 million of equity, which included more than $42 million of cash, ICI had liability for future commitments on charter-in agreements of approximately $496 million due within one year, an additional $287 million due within one to five years, and $49 million due in more than five years, for a total liability of approximately $832 million.

c)  After the worldwide economic crisis began in September 2008, shipping rates began to crash, and ICI could no longer sustain its highly-leveraged balance sheet. ICI filed for bankruptcy in Greece on or about October 15, 2008. Only ICI filed for bankruptcy, while ICI's wholly-owned subsidiaries, related entities and alter-egos did not file for bankruptcy.

d) Because those subsidiaries did not also file for bankruptcy, one would have expected ICI to have listed the amounts held by the subsidiaries as intercompany receivables (or amounts due from related parties) as an asset in the bankruptcy filing. No such disclosure appears to have been made.

e) A decrease in accounts receivable between June 30, 2008 and the October 15, 2008 bankruptcy means that ICI's cash balance should have increased by $47.6 million during the same period on account of the change in accounts receivable—but ICI's cash on hand on October 15, 2008 was only $4,000,000.

f) ICI directed cash payments to subsidiary companies identified as companies created for the sole purpose of receiving cash due ICI, and that such an arrangement is unusual.

g) Based on a review of ICI's 2008 balance sheets, there appears to have been a large transfer of cash out of ICI and/or its related companies without explanation.

h) ICI's apparent failure to disclose intercompany receivables due from its subsidiaries in its bankruptcy filing in Greece is not in accordance with standard accounting practices.

i) The analysis of the changes in the balance sheet items indicates that cash to ICI should have increased by $47.6 million on account of the collection of accounts receivable and possibly $20.2 million on account of the bunker inventory.  In addition, cash should have decreased by $25.5 million as a result of the decrease in account payable and $4.5 million from a decrease in the amount owed to shareholders (assuming the debt was not forgiven).

Therefore, based upon the available information, one would have expected cash to increase by a total of at least $17.6 million ($47.6 million - $25.5 million - $4.5 million). If the bunker inventory was sold and not used in the operations, one would have expected cash to increase by $37.8 million ($17.6 million + $20.2 million). However, cash actually decreased by $39.6 million. **This difference between the expected amount of cash and the actual cash balance is $57.2 million ($17.6 million + $39.6 million).** When one takes into account that the wholly-owned subsidiaries of ICI have "disappeared," the difference between the expected and actual cash balances is highly suspect.

121.    Upon information and belief, ICI, with the intent to deceive and defraud its creditors, including Flame, fraudulently conveyed and transferred in bulk all or substantially all of its cash to its subsidiary companies, which included Vista, the Palmira Group of companies and, ultimately, FBP.

122.    Alternatively, ICI's fraudulent transfers were used to capitalize Vista in order to create a successor company and avoid ICI's creditors. Later, Vista, FBP, and the rest of the Palmira Group, began conducting business as a single entity, comingling funds, and disregarding corporate formalities.

123.    Based on the foregoing, as well as other activities, the Defendants should be considered a single economic unit with no corporate distinction between or among any of them, rendering each liable for the debts of the other, and all assets of Defendants together should be susceptible to attachment and/or restraint for the debts of ICI.

124.   By virtue of the foregoing, all of the named Defendants are properly considered as liable on the Judgment against ICI in favor of Flame.

125.   The four (4) Agreements called for the application of English law. Under English law, including, but not limited to Section 63 of the English Arbitration Act of 1996, costs, including attorneys' fees, disbursements, and interest are recoverable as part of Flame's main claim.

126.   This action is further brought to obtain security for the additional sums which are recoverable including Flame's anticipated attorneys' fees and costs of collection, all of which are recoverable as part of Flame's claim under English law.

127.   Flame estimates that, as nearly as presently may be calculated, the outstanding sum due under the English Judgment, together with recoverable attorneys' fees, legal expenses, costs, and interest is no less than $21,000,000.00.

128.   Flame reserves the right to amend this Complaint to seek additional security to the extent that the amount of security sought herein should prove to be inadequate to fully secure Flame.

**WHEREFORE**, Plaintiff Flame prays:

a. That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing, failing which Plaintiff will move for default on the principal amounts owed together with interest, costs, disbursements, and reasonable attorneys' fees;

c. That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d.    For such other, further and different relief as the Court may deem just and proper

in the premises.

This 25th day of August, 2014.

FLAME S.A.

_____

Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel: (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com

-  and  -

William R. Bennett, III
Lauren B. Wilgus
Nicholas R. Tambone
*Attorneys for Plaintiff Flame S.A.*
*Previously Admitted Pro Hac Vice*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 885-5000
Fax: (212) 885-5001
WBennett@BlankRome.com
LWilgus@BlankRome.com
NTambone@BlankRome.com