**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FLAME S.A.,

                    Plaintiff,

          v.

VIKTOR BARANSKIY, SERGEI
BARANSKIY, VITALIY CHEREPANOV,
PAGONA KARAGIORGI, VLADIMIR
TARASOV, ANDREY KOZMINYKH,
ARTYOM MASHUTIN, ALEXANDER
SENCHENKO, LILIYA DARIY,
INDUSTRIAL CARRIERS, INC., WEAVER
INVESTMENT INC., TEMPEST SERVICE
INC., AUSTER MARINE CO., SELENE
SHIPMANAGEMENT S.A., CARDINIA
MANAGEMENT CO., TRESELLE
NAVIGATION INC., SYRIANA MARINE
CO., PHAEDRA INTERNATIONAL INC.,
NOXANA INVESTMENTS LTD.,
BRANWYN MARINE CORP., DIAMANT
CO. LTD., IC UKRAINE LTD., VISTA
SHIPPING, LTD., MILESTONE SHIPPING
S.A., CHAIKA AGENCY CO. LTD.,
EDELWEISS CONSULTANTS S.A., ITIRO
CORPORATION, PHAETON
INTERNATIONAL COMPANY SA,
FREIGHT BULK PTE. LTD., COLUMBUS
MARITIME CO. LTD., PALMIRA
HOLDING N.V., HACHI HOLDING LTD.,
RAINBOW CONSULTANTS CO., ALBARA
DI MEZZANA SHIPPING CO., FREIGHT
BULK LTD., PRIVILEGE WIN COMPANY
LTD., EXPRESS FORTUNE LIMITED, OIL
AND BULK TRADING CO., WALKTOWN
NETWORK LLP, ALPEN
SHIPMANAGEMENT CO., PALMIRA
ENTERPRISES S.A., VISTA MARITIME
INTERNATIONAL LTD., COLUMBUS
MARITIME SHIPPING CORPORATION,
OCEAN STEVEDORING COMPANY,
ALPINE INVESTMENTS GROUP CORP.,

Civil Action No.
14-0438

RECHMORTRANS LTD. COSTA PALMA
NAVIGATION INC., SAIWAI MARU
SHIPPING CO., SWEET WIND
ENTERPRISES LTD., MOON SHADOW
MARINE CO., MARINE TRAVELER CO.,
MYSTIQUE VOYAGEUR SHIPPING LTD.,
SHINE CRYSTAL NAVIGATION CO.,
SERENA SEA NAVIGATION CO., LUCKY
CONSTELLATION LTD., EVENING STAR
SHIPPING CO., OCEAN SOUL TRADE CO.,
POLAR GALAXY CO., CARAVELA
SHIPPING LTD., ALBA NAVIGARE CO.,
SONIC STAR NAVIGATION CO., ORBIS
MARITIME CO., SEA STAR HOLDING
LTD., VELAS ESCARLATA LTD., ROYAL
SEA ENTERPRISES LTD., PORTA DE
MARE SHIPPING CO., STELLA POLARE
LTD., SEA LOGISTIC INTERNATIONAL
LTD., TRANSINTERCONTINENTAL
CORP., TRISTAR ENTERPRISES LTD.,
CONSTELLATION MARITIME GROUP
LTD., FAST DELIVERY MARITIME LTD.,
INTERNATIONAL MARITIME LTD.,
MARITIME WORLDWIDE SHIPPING LTD.,
ATLANTIC MARINE DIVISION CORP.,
PRIME STAR HOLDINGS INC., TRANS-
SERVICE LTD., POLYCENTER LLP,
ATLANTA TRADING CO., SMART
TRADING LLP, HUAN HWA TRADING
LTD., SEA TRAFFIC SHIPPING CO.,
BLACK SEA SHIPPING INDEX LLP,
GENERAL CARGO SURVEY LLP,
DAREDECK LIMITED, MARITIME
SERVICES COMPANY LTD., SEA BREEZE
NAVIGATION INC., BLACK SEA AZOV
SERVICES, and CORAL SEA SPIRIT, INC.

Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff, Flame S.A. (hereinafter "Flame"), by and through its attorneys, Crenshaw,

Ware & Martin, P.L.C. and Blank Rome LLP , files its First Amended Complaint against

Defendants Viktor Baranskiy, Sergei Baranskiy, Vitaliy Cherepanov, Pagona Karagiorgi,

Vladimir Tarasov, Andrey Kozminykh, Artyom Mashutin, Alexander Senchenko, Liliya Dariy, Industrial Carriers, Inc. ("Industrial Carriers"), Weaver Investment Inc. ("Weaver"), Tempest Service Inc. ("Tempest"), Auster Marine Co. ("Auster Marine"), Selene Shipmanagement S.A. ("Selene"), Cardinia Management Co. ("Cardinia"), Treselle Navigation Inc. ("Treselle"), Syriana Marine Co. ("Syriana"), Phaedra International Inc. ("Phaedra"), Noxana Investments Ltd. ("Noxana"), Branwyn Marine Corp. ("Branwyn"), Diamant Co. Ltd. ("Diamant"), IC Ukraine Ltd. ("IC Ukraine"), Vista Shipping, Ltd. ("Vista"), Milestone Shipping S.A. ("Milestone"), Chaika Agency Co. Ltd. ("Chaika"), Edelweiss Consultants S.A. ("Edelweiss"), Itiro Corporation ("Itiro"), Phaeton International Company SA ("Phaeton"), Freight Bulk Pte. Ltd. ("Freight Bulk"), Columbus Maritime Co. Ltd., Palmira Holding N.V., Hachi Holding Ltd. ("Hachi"), Rainbow Consultants Co., Albara Di Mezzana Shipping Co., Freight Bulk Ltd., Privilege Win Company Ltd., Express Fortune Limited, Oil and Bulk Trading Co., Walktown Network LLP, Alpen Shipmanagement Co., Palmira Enterprises S.A., Vista Maritime International Ltd., Columbus Maritime Shipping Corporation, Ocean Stevedoring Company, Alpine Investments Group Corp., Rechmortrans Ltd. Costa Palma Navigation Inc., Saiwai Maru Shipping Co., Sweet Wind Enterprises Ltd., Moon Shadow Marine Co., Marine Traveler Co., Mystique Voyageur Shipping Ltd., Shine Crystal Navigation Co., Serena Sea Navigation Co., Lucky Constellation Ltd., Evening Star Shipping Co., Ocean Soul Trade Co., Polar Galaxy Co., Caravela Shipping Ltd., Alba Navigare Co., Sonic Star Navigation Co., Orbis Maritime Co., Sea Star Holding Ltd., Velas Escarlata Ltd., Royal Sea Enterprises Ltd., Porta De Mare Shipping Co., Stella Polare Ltd., Sea Logistic International Ltd., Transintercontinental Corp., Tristar Enterprises Ltd., Constellation Maritime Group Ltd., Fast Delivery Maritime Ltd., International Maritime Ltd., Maritime Worldwide Shipping Ltd., Atlantic Marine Division Corp., Prime Star

Holdings Inc., Trans-Service Ltd., Polycenter LLP, Atlanta Trading Co., Smart Trading LLP, Huan Hwa Trading Ltd., Sea Traffic Shipping Co., Black Sea Shipping Index LLP, General Cargo Survey LLP, Daredeck Limited, Maritime Services Company Ltd., Sea Breeze Navigation Inc., Black Sea Azov Services, and Coral Sea Spirit, Inc. (hereinafter the "Palmira Group") (collectively "Defendants," unless otherwise specified), alleges:

### Preliminary Statement

1.      This action involves the recovery of a foreign judgment in the sum of USD $19,907,118.36 (the "Judgment"), entered in favor of Flame and against Industrial Carriers.

2.      In 2008, freight rates in the shipping market—and in particular, the bulker market—crashed. Industrial Carriers was, financially, on the wrong side of the crash and took heavy losses. Industrial Carriers, however, never felt those losses, because it fraudulently transferred its assets to Defendants.

3.      The Southern District of New York has recognized Flame's foreign judgment, and Flame has registered its judgment from the Southern District of New York in the Eastern District of Virginia.

4.      On November 22, 2013, Flame initiated an action in the Eastern District of Virginia entitled *Flame S.A. v. Industrial Carriers, Inc.*, No. 13-0658 (Doumar, J.) (the "2013 Action"). The defendants in that action were Industrial Carriers, Viktor Baranskiy, Sergei Baranskiy, Vista, and Freight Bulk. Flame alleged: (1) that Viktor Baranskiy, Sergei Baranskiy, Vista, and Freight Bulk were alter egos of Industrial Carriers, and (2) that Industrial Carriers had fraudulently transferred assets to the other defendants while insolvent, and with intent to hinder, delay, or defraud creditors. Under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Flame attached a vessel owned by Freight Bulk called the M/V CAPE VIEWER for pre-judgment security in that action.

5.      During discovery in the 2013 Action, Flame learned that Viktor Baranskiy operates a large network of sham companies known as the "Palmira Group," and that the Palmira Group operates as an instrumentality of Industrial Carriers' fraud. Flame also learned the identity of other companies and individuals that are instrumentalities of Industrial Carriers' fraud. Flame learned this information only weeks before trial was scheduled to begin, and although Flame sought leave to amend its pleadings to add the additional defendants and allegations, the Court did not permit Flame to amend its allegations on the eve of trial.

6.      Between August 26, 2014 and September 4, 2014, a bench trial was held in the 2013 Action before the Honorable Robert G. Doumar. Defendants were represented by lead counsel Sergei Kachura, Esquire. Viktor Baranskiy voluntarily appeared in Court to testify on behalf of Defendants. After Flame rested its case in chief, Sergei Kachura called Viktor Baranskiy to testify. On the sixth day of trial, after Viktor Baranskiy's direct testimony concluded, counsel for Flame began its cross examination of Viktor Baranskiy, but did not conclude the cross examination. On the morning of the seventh day of trial, local counsel for defendants informed Flame's counsel, and the Court, that Viktor Baranskiy and Sergei Kachura refused to participate in the remainder of the trial. The whereabouts of Viktor Baranskiy and Sergei Kachura are unknown, but on information and belief, both men are currently in Odessa, Ukraine.

7.      Following Viktor Baranskiy and Sergei Kachura's refusal to participate in the remainder of the trial, defendants rested without presenting additional evidence. The Court made findings of fact in favor of Flame from the bench, and Flame anticipates a formal judgment in Flame's favor, and against defendants, to be forthcoming.

8.     The Court and the parties to the 2013 Action (with defendants represented by local counsel), are currently arranging for the sale M/V CAPE VIEWER. Some of the sale proceeds of the M/V CAPE VIEWER will be applied to Flame's Judgment; however, the sale proceeds will likely cover less than one-third of the total amount of the Judgment.

9.     Before Viktor Baranskiy abandoned his defense of the 2013 Action and fled the United States, Flame served him in Norfolk, Virginia with the Summons and Complaint in this action under Federal Rule of Civil Procedure 4.

10.     The purpose of this Action is to obtain a judgment against Defendants, who are the instrumentalities of Industrial Carriers' fraud, to aid the collection of Flame's deficiency balance on the Judgment after the sale proceeds from the M/V CAPE VIEWER are applied.

### Jurisdiction and Venue

11.     This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, in that it involves a claim for the enforcement of a maritime judgment, the underlying basis of which was a claim for breach of four maritime contracts called Forward Freight Agreements. The Court also has supplemental and/or ancillary jurisdiction over any and all non-maritime claims, if any.

12.     Viktor Baranskiy, who has been deemed by this Court to be the alter ego of Industrial Carriers, Vista, and Freight Bulk, and the entire Palmira Group, was served with process in the Eastern District of Virginia after he voluntarily appeared within the Court's jurisdiction to testify on behalf of Defendants.

## The Parties

**A.     Plaintiff**

13.     At all times material, Flame was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of Switzerland, with an office and principal place of business in Switzerland.

**B.     Individual Defendants**

14.     At all times material, defendant Viktor Baranskiy was, and now is, a foreign citizen and resident of Ukraine.

15.     Viktor Baranskiy is an 18% shareholder of defendant Industrial Carriers.

16.     Viktor Baranskiy is the sole dominant shareholder and alter ego of the entire Palmira Group of companies.

17.     Viktor Baranskiy is the son of defendant Sergei Baranskiy.

18.     At all times material, defendant Sergei Baranskiy was, and now is, a foreign citizen and resident of Ukraine.

19.     Sergei Baranskiy is a 33% shareholder of defendant Industrial Carriers. Together with his son, Viktor Baranskiy, Viktor and Sergei Baranskiy own 51% of Industrial Carriers.

20.     At all times material, Sergei Baranskiy was chairman of the board of directors of Industrial Carriers.

21.     Sergei Baranskiy is a shareholder of defendant Milestone.

22.     Sergei Baranskiy is a shareholder of defendant Chaika.

23.     Sergei Baranskiy is a shareholder of defendant Diamant.

24.     Sergei Baranskiy is a shareholder of defendant IC Ukraine.

25.     On information and belief, Sergei Baranskiy is a shareholder of defendants Weaver, Tempest, Auster Marine, Selene, Cardinia, Treselle, Syriana, Phaedra, Noxana, and Branwyn.

26.     Sergei Baranskiy is the ex-husband of defendant Lilya Dariy.

27.     At all times material, defendant Vitaliy Cherepanov was, and now is, a foreign citizen and resident of Greece.

28.     Vitaliy Cherepanov is a 21.8% shareholder of defendant Industrial Carriers.

29.     At all times material, Vitaliy Cherepanov was on the board of directors of Industrial Carriers.

30.     At all times material, defendant Pagona Karagiorgi was, and now is, a foreign citizen and resident of Greece.

31.     At all times material, Pagona Karagiorgi was on the board of directors of Industrial Carriers.

32.     At all times material, Vladimir Tarasov was, and now is, a foreign citizen and resident of Ukraine.

33.     Vladimir Tarasov is a 14% shareholder of defendant Industrial Carriers.

34.     Vladimir Tarasov is a shareholder of defendant Milestone.

35.     Vladimir Tarasov is a shareholder of defendant Chaika.

36.     At all times material, defendant Andrey Kozminykh was, and now is, a foreign citizen and resident of Ukraine.

37.     Andrey Kozminykh is a 13.2% shareholder of Industrial Carriers.

38.     On information and belief, Andrey Kozminykh is the sole dominant shareholder of defendant Phaeton.

39.     At all times material, defendant Artyom Mashutin was, and now is, a foreign citizen and resident of Ukraine.

40.     Artyom Mashutin is a former employee of Industrial Carriers.

41.     On information and belief, Artyom Mashutin is the sole dominant shareholder of defendant Itiro.

42.     At all times material, defendant Alexander Senchenko was, and now is, a foreign citizen.

43.     On information and belief, Alexander Senchenko is the sole dominant shareholder of defendant Edelweiss.

44.     At all times material, defendant Liliya Dariy was, and now is, a foreign citizen and resident of Ukraine.

45.     On information and belief, Liliya Dariy is registered as the sole shareholder of certain entities in the Palmira Group of companies, including defendant Hachi, but her ownership is a sham, and Viktor Baranskiy retains all beneficial ownership interests and control over the Palmira Group.

46.     Liliya Dariy is the mother of Viktor Baranskiy.

47.     Liliya Dariy is the ex-wife of Sergei Baranskiy.

**C.     Industrial Carriers and Related Entities**

48.     At all times material, defendant Industrial Carriers was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

49.     Industrial Carriers was, at all times relevant herein, registered to do business in New York and was a party in multiple lawsuits filed in the Southern District of New York.

50.     Flame has registered a judgment from the Southern District of New York against defendant Industrial Carriers in this District.

51.     Defendant Weaver is a subsidiary of Industrial Carriers. At all times material, defendant Weaver was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

52.     Defendant Tempest is a subsidiary of Industrial Carriers. At all times material, defendant Tempest was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

53.     Defendant Auster Marine is a subsidiary of Industrial Carriers. At all times material, defendant Auster Marine was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

54.     Defendant Selene is a subsidiary of Industrial Carriers. At all times material, defendant Selene was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

55.     Defendant Cardinia is a subsidiary of Industrial Carriers. At all times material, defendant Cardinia was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

56.     Defendant Treselle is a subsidiary of Industrial Carriers. At all times material, defendant Treselle was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

57.     Defendant Syriana is a subsidiary of Industrial Carriers. At all times material, defendant Syriana was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

58.     Defendant Phaedra is a subsidiary of Industrial Carriers. At all times material, defendant Phaedra was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

59.     Defendant Noxana is a subsidiary of Industrial Carriers. At all times material, defendant Noxana was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

60.     Defendant Branwyn is a subsidiary of Industrial Carriers. At all times material, defendant Branwyn was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

61.     Defendant Diamant is a subsidiary of Industrial Carriers. At all times material, defendant Diamant was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

62.     Defendant IC Ukraine is a subsidiary of Industrial Carriers. At all times material, defendant IC Ukraine was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

**D.     Defendant Edelweiss**

63.     Defendant Edelweiss is owned by defendant Alexander Senchenko. At all times material, defendant Edelweiss was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

64.     On information and belief, the sole purpose of Edelweiss is for Alexander Senchenko to receive unlawful "kickback" payments from Industrial Carriers and the Palmira Group.

### E. Industrial Carriers' Successor Entities

#### 1. Milestone

65.     At all times material, defendant Milestone was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

66.     While insolvent, and with intent to hinder, delay, and defraud creditors, Industrial Carriers fraudulently transferred its business relationship with Ferrous Metal Company, a Russian iron ore producer, to Milestone.

67.     At all times material, defendant Chaika was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

68.     Chaika provides "agency services" to Milestone, and the two companies act as one entity.

#### 2. Phaeton

69.     At all times material, defendant Phaeton was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

70.     While insolvent, and with intent to hinder, delay, and defraud creditors, Industrial Carriers fraudulently transferred its business relationships with its grain and steel customers to Phaeton.

#### 3. Itiro

71.     At all times material, defendant Itiro was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

72.     While insolvent, and with intent to hinder, delay, and defraud creditors, Industrial Carriers fraudulently transferred its business relationships with its fertilizer customers to Itiro.

### 4.     The Palmira Group

73.     Defendant Vista was the first entity in what would become the Palmira Group of companies, which now includes over sixty entities, each owned, controlled, and dominated by Viktor Baranskiy.

74.     The entities in the Palmira Group act as a single company, and are alter egos of each other.

75.     At all times material, defendant Vista was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

76.     Vista was, at all times relevant, registered to do business in the State of New York.

77.     While insolvent, and with intent to hinder, delay, and defraud creditors, Industrial Carriers fraudulently transferred its business relationship with Metinvest, a Ukrainian iron ore producer, to Vista.

78.     Freight Bulk was, is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

79.     Columbus Maritime Co. Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies and/or provided agency services to the Palmira Group of companies.

80.     Palmira Holding N.V. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

81.     Hachi Holding Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

82.     Rainbow Consultants Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

83.     Albara Di Mezzana Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

84.     Freight Bulk Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

85.     Privilege Win Company Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

86.     Express Fortune Limited is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

87.     Oil and Bulk Trading Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

88. Walktown Network LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

89. Alpen Shipmanagement Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

90. Palmira Enterprises S.A. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

91. Vista Maritime International Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

92. Columbus Maritime Shipping Corporation is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

93. Ocean Stevedoring Company is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

94.     Alpine Investments Group Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

95.     Rechmortrans Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

96.     Costa Palma Navigation Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

97.     Saiwai Maru Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

98.     Sweet Wind Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

99.     Moon Shadow Marine Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

100.    Marine Traveler Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

101.    Mystique Voyageur Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

102.    Shine Crystal Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

103.    Serena Sea Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

104.    Lucky Constellation Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

105.    Evening Star Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

106.    Ocean Soul Trade Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

107.    Polar Galaxy Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

108.    Caravela Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

109.    Alba Navigare Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

110.    Sonic Star Navigation Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

111.    Orbis Maritime Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

112.    Sea Star Holding Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

113.    Velas Escarlata Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

114.    Royal Sea Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

115.    Porta De Mare Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

116.    Stella Polare Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

117.    Sea Logistic International Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

118.    Transintercontinental Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

119.   Tristar Enterprises Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

120.   Constellation Maritime Group Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

121.   Fast Delivery Maritime Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

122.   International Maritime Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

123.   Maritime Worldwide Shipping Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

124.   Atlantic Marine Division Corp. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

125.    Prime Star Holdings Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

126.    Trans-Service Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

127.    Polycenter LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

128.    Atlanta Trading Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

129.    Smart Trading LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

130.    Huan Hwa Trading Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

131.    Sea Traffic Shipping Co. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

132.    Black Sea Shipping Index LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and

dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

133.   General Cargo Survey LLP is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

134.   Daredeck Limited is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

135.   Maritime Services Company Ltd. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

136.   Sea Breeze Navigation Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

137.   Black Sea Azov Services is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

138.   Cora Sea Spirit, Inc. is a foreign corporation or other entity organized under the laws of a foreign country and at all times was owned, operated, controlled and dominated by Defendant Viktor Baranskiy, and was and is part of the Palmira Group of companies.

**Industrial Carriers' Fraud, Insolvency, Bankruptcy Petition, and
Breach of its Agreements with Flame**

139.    As part of its trading activities, Flame and Industrial Carriers entered into four (4) Forward Freight Agreements (the "Agreements") dated March 12, 2008, May 19, 2008, August 14, 2008, and August 29, 2008. *See* Exs. 1-4.

140.    Forward Freight Agreements are derivative contracts. The value of the contracts is derived from a freight rate for a specific physical trade route that receives a daily assessment on one of the Baltic Exchange Indices. The Agreements served as a means of hedging exposure to freight market risk by providing for the purchase and sale of a freight rate along a named voyage route over a specified period of time.

141.    Forward Freight Agreements are cash settled each month. On settlement, if the contract rate is less than the average of the rates for the contract route over the contract period, as determined by reference to the relevant index, the seller of the Forward Freight Agreement is required to pay the buyer an amount equal to the difference between the contract rate and the settlement rate multiplied by the number of days specified in the contract. Conversely, if the contract rate is greater than the settlement rate the buyer is required to pay the seller the settlement sum.

142.    Unknown to Flame, as early as June 30, 2008, Industrial Carriers was insolvent from a balance sheet perspective.

143.    As a practice, Defendants use entities known as "money-changing companies" or "cash-conversion companies" to convert bank wire transfers into equivalent amounts in cash—U.S. dollars. These money-changing companies include or included: Redbridge Benefits LLP ("Redbridge"), Trend Index LLP ("Trend Index"), Charlotte LLP, and Paladin Shipping Co. Ltd.

144.    As a practice, Defendants make bank wire transfers using a method called "In Cover Payment." "In Cover Payment" transactions conceal the beneficiary of a bank wire transfer. Although banks sometimes use "In Cover Payment" transfers for legitimate purposes, Defendants routinely use "In Cover Payment" transfers to conceal the beneficiary of wire transfers, in furtherance of fraudulent conduct.

145.    As a practice, Industrial Carriers siphoned its assets to its subsidiary companies Weaver, Tempest, Auster Marine, Selene, Cardinia, and Tressele.

146.    In particular, between January 2008 and October 2008, over $478 million in payments belonging to Industrial Carriers were directed to Weaver, of which over $475 million is unaccounted for.

147.    Industrial Carriers' goal in siphoning its assets to its subsidiary companies was to hinder, delay, and defraud creditors, and to avoid Rule B attachment of Industrial Carriers' property by creditors.

148.    Despite Industrial Carriers' insolvency and imminent bankruptcy filing, in or around March to August 2008, Industrial Carriers, Selene, and Auster Marine fraudulently transferred $1,674,019.44 to Defendant Edelweiss. On information and belief, the sole purpose of Edelweiss was for Defendant Alexander Senchenko to receive unlawful "kickback" payments from Defendants for his role in providing business to Defendants from Metinvest International S.A., a Ukrainian iron ore producer.

149.    Despite Industrial Carriers' insolvency and imminent bankruptcy filing, in or about June and July 2008, Industrial Carriers and Auster Marine fraudulently transferred $39,336,600 to undisclosed beneficiaries using the "In Cover Payment" method, designed to conceal the identity of the beneficiaries.

150. Following the bankruptcy of Lehman Brothers Holdings Inc. on September 15, 2008, freight rates in the shipping market began to crash. Consequently, Industrial Carriers' financial obligations increased dramatically.

151. In or about September 2008, Industrial Carriers chartered a vessel called the M/V HARMONY FALCON from Falcon Shipping Ltd., a Vietnamese company. Despite Industrial Carriers' insolvency and imminent bankruptcy filing, in or about October 2008, Industrial Carriers fraudulently conveyed the charter of the M/V HARMONY FALCON to Defendant Vista without consideration, with intent to hinder, delay, and defraud creditors. Vista earned profits from the charter of the M/V HARMONY FALCON in excess of $2.7 million.

152. Despite Industrial Carriers' insolvency and imminent bankruptcy filing, in or about October 2008, while Defendant Sergei Baranskiy was chairman of Industrial Carriers' board of directors, Industrial Carriers fraudulently transferred $1,588,109 to Viktor Baranskiy, an 18% shareholder in Industrial Carriers and Sergei Baranskiy's son.

153. Despite Industrial Carriers' insolvency and imminent bankruptcy filing, in or about October 2008, Industrial Carriers, via its subsidiaries Syriana Marine, Phaedra, and Noxana, fraudulently transferred $1,856,282.08 to undisclosed beneficiaries using the "In Cover Payment" method, designed to conceal the identity of the beneficiaries.

154. On October 15, 2008, Industrial Companies filed a bankruptcy petition in the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction—Admiralty Division, Piraeus, Greece). However, Industrial Carriers did not disclose the $475 million in Weaver's possession to its creditors, even though the $475 million was the property of Industrial Carriers. Moreover, none of Industrial Carriers' subsidiaries were disclosed in the bankruptcy.

155.    Industrial Carriers' October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) of the Agreements in that Industrial Carriers had, by that application, "[sought] the appointment of a . . . receiver, trustee, custodian or other similar official for it or for all or substantially all its assets."

156.    Pursuant to section 6(a) of the Agreements, the October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) and gave rise to a right of Early Termination of the Agreements.

157.    Clause 9(f) of the Agreements provides for Automatic Early Termination to apply to both parties, therefore, the Agreements were automatically terminated because of Industrial Carriers' October 15, 2008 bankruptcy petition.

158.    Industrial Carriers breached the Agreements.

159.    Defendant Industrial Carriers' October 15, 2008 bankruptcy petition was ultimately rejected on the basis that the Centre of Main Interest was not in Greece, but in Odessa, Ukraine. Accordingly, Industrial Carriers is still an actively registered company in the Marshall Islands, and is still listed as an "active" company on the Marshall Islands' website.

**Industrial Carriers' Fraudulent Transfers to its Alter Ego Successor Companies**

160.    In the period shortly before and shortly after the collapse of Industrial Carriers, Industrial Carriers split its business into four alter ego successor companies:

      a.      Industrial Carriers fraudulently transferred its iron ore business relationship with Metinvest, a Ukrainian iron ore producer, to defendant Vista Shipping Ltd., which is owned and operated by Defendant Viktor Baranskiy, an 18% shareholder in Industrial Carriers.

      b.      Industrial Carriers fraudulently transferred its iron ore business relationship with Ferrous Metal Company, a Russian iron ore producer, to

defendant Milestone Shipping S.A., which is owned and operated by Defendant Sergei Baranskiy, a 33% shareholder in Industrial Carriers, and Defendant Vladimir Tarasov, a 14% shareholder in Industrial Carriers.

c.      Industrial Carriers fraudulently transferred its relationships with its grain and steel customers to defendant Phaeton International Company SA, which is owned and operated by Defendant Andrey Kozminykh, a 13.2% shareholder in Industrial Carriers

d.      Industrial Carriers fraudulently transferred its relationships with its fertilizer customers to defendant Itiro Corporation, which is owned and operated by Defendant Artyom Mashutin, a former Industrial Carriers employee.

161.    Vista evolved into a sprawling mass of over sixty sham companies, which are collectively called the Palmira Group.

162.    The individual companies within the Palmira Group are mere instrumentalities in Industrial Carriers' and Viktor Baranskiy's scheme to hinder, delay, and defraud creditors.

163.    As previously determined by this Court following the trial in the 2013 Action, the entities in the Palmira Group, including Vista and Freight Bulk, are alter egos of Industrial Carriers and Viktor Baranskiy.

164.    Viktor Baranskiy's first three employees that joined Vista immediately following the demise of Industrial Carriers were all key Industrial Carriers employees. The first three employees were:

a.      Constantin Voinarovskiy

b.      Vladimir Yudaev

c.      Michael Ivanov

165.      Constantin Voinarovskiy was a chartering department employee at Industrial Carriers, and chartered the M/V HARMONY FALCON for Industrial Carriers, before joining Vista.

166.      Constantin Voinarovskiy later left Vista and joined Milestone.

167.      Other Industrial Carriers employees later joined Vista, including Daniel Su, Industrial Carriers' representative in Shanghai, China.

168.      Companies in the Palmira Group (which is owned by Viktor Baranskiy) and Milestone (which is owned by Viktor Baranskiy's father, Sergei Baranskiy) routinely make sham "short term loans" to each other. The loans do not provide for any interest and the terms of repayment are "according to the liquidity of the company." No consideration is provided for these "loans," which are unenforceable contracts—in effect, the "loans" are gifts passed back and forth between the two companies.

169.      The transactions between Milestone and the Palmira Group are not at arm's length.

170.      Milestone and the Palmira Group fail to follow observe corporate formalities and maintain proper corporate records.

171.      Milestone and the Palmira Group routinely siphon funds to each other.

172.      The Palmira Group routinely siphons funds by making inter-company transfers within the group, without consideration and without proper business records.

173.      The Palmira Group is dominated by a sole shareholder, Viktor Baranskiy, an 18% shareholder in Industrial Carriers.

174.    Milestone is dominated by Sergei Baranskiy, a 33% shareholder n Industrial Carriers, and Vladimir Tarasov, a 14% shareholder in Industrial Carriers.

175.    Because of the fraudulent conduct of Defendants, Flame's Judgment remains unpaid, resulting in injustice and fundamental unfairness.

176.    The fraudulent conduct of all Defendants continues as of the date of this First Amended Complaint.

**Viktor Baranskiy's Continuation of Industrial Carriers' Pattern of Fraud**

177.    Viktor Baranskiy's operation of the Palmira Group demonstrates a continuation of Industrial Carriers' fraudulent practices.

178.    Like Industrial Carriers, as a practice, the Palmira Group directs payments to subsidiaries, which exist only to maintain bank accounts used in the operations of the entire Palmira Group.

179.    Like Industrial Carriers, as a practice, the Palmira Group incorporates Ukrainian companies that exist only to serve as the Palmira Group's employees' "official" workplaces, where they earn their "official" salaries. Meanwhile, the Palmira Group's employees collect generous "unofficial" salaries and bonuses from the Palmira Group's "offshore" entities incorporated in jurisdictions such as the Marshall Islands and the British Virgin Islands. These large "unofficial" salaries and bonuses are paid in cash—U.S. dollars—and can be in excess of $500,000 for a year's work.

180.    Like Industrial Carriers, as a practice, the Palmira Group masks the true purpose of bank wire transfers by intentionally and fraudulently mislabeling the transactions with generic names, such as: "Spare Parts," "Per Consultancy Agreement," "Per Invoice Dated XX/XXXX," or "For Ocean Freight." The goal of mislabeling these bank wire transfers is to hinder, delay, and defraud creditors.

181.   Like Industrial Carriers, as a practice, the Palmira Group routinely intermingles the funds of one company in the group with the funds of other companies in the group. For instance:

a.   Funds collected by various Palmira Group companies are wired to "money-changing companies," which convert the wires into cash—U.S. dollars—and the cash is then deposited into bank boxes, where the cash is intermingled with the cash assets belonging to various other Palmira Group companies.

b.   The Palmira Group's employees' "unofficial" salaries and bonuses are paid using the intermingled cash belonging to the various companies in the Palmira Group.

c.   The Palmira Group's vessels (and other large assets) are purchased using a series of sham inter-company wire transfers. For instance, a vessel is purchased by the Palmira Group using the funds earned by one Palmira Group entity, which are then transferred to a second Palmira Group entity (a "single-purpose vessel-owning company"), which then wires the funds to the vessel seller. No consideration is provided for the inter-company transfer of funds. Moreover, it is exceedingly rare in the shipping industry for companies to purchase vessels in cash, without a mortgage.

182.   Like Industrial Carriers, the Palmira Group makes fraudulent transfers to hinder, delay, and defraud creditors. For instance:

a.   Hachi Holding Ltd. is a company in the Palmira Group. Hachi is described by the Palmira Group's auditors as a "holding company." On information

and belief, Hachi is the parent company of many other companies in the Palmira Group, including all single-purpose vessel-owning companies, including Freight Bulk. Thus, Hachi is the ultimate owner of all vessels owned by the Palmira Group and, consequently, Hachi owns assets in excess of $100 million.

b.      On January 18, 2011, a transfer of 500 bearer shares of stock in Hachi were made as an original issue. Viktor Baranskiy was the holder of the bearer shares and, consequently, Viktor Baranskiy was the sole shareholder of Hachi. The bearer shares are reflected in Hachi share certificate No. 1.

c.      On September 13, 2013, Viktor Baranskiy transferred his 500 bearer shares of Hachi stock to his mother, Defendant Liliya Dariy, without consideration.

d.      On the same day, September 13, 2013, Liliya Dariy transferred the 500 bearer shares of Hachi to Defendant Palmira Holding N.V., another holding company in the Palmira Group, for the sum total of €1 (one euro).[1] This transfer is reflected in Hachi share certificate No. 2.

e.      On March 31, 2014, the 500 shares of Hachi stock owned by Palmira Holding N.V. were transferred back to Liliya Dariy for the total sum of €1. This transfer is reflected in Hachi share certificate No. 3, and was made while Flame was pursuing its lawsuit against Freight Bulk in an attempt to

---

[1] As of the date of this pleading, €1 is equal to approximately $1.30 (one dollar and thirty cents).

frustrate Flame's ability to collect a Judgment against the rest of the Palmira Group.

f.      Each of these transfers was a sham fraudulent transaction, made without consideration, with the intent to hinder, delay, and defraud creditors.

**Procedural History Leading to the Instant Litigation**

### F.      The London Proceedings

183.    In or about November 2010, Flame commenced an action in London, England against Industrial Carriers to recover the amounts due and owing under the Agreements. *See* Ex. 5.

184.    On December 13, 2010, the High Court of Justice, Queen's Bench Division, Commercial Court Registry entered a judgment for Flame as against Industrial Carriers and ordered Industrial Carriers to pay Flame a total of USD $19,907,118.36 (hereinafter referred to as the "Judgment"). *See* Ex. 6.

185.    Under the Order issued by the High Court of Justice, Queens Bench Division, Commercial Court Registry, defendant Industrial Carriers is obliged to pay Flame $19,907,118.36, excluding post-judgment interest and attorney's fees.

186.    The Order issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry is a final Judgment, conclusive and enforceable in England.

187.    The $19,907,118.36 Judgment against defendant Industrial Carriers in the High Court of Justice, Queen's Bench Division, Commercial Court Registry remains unpaid to date, though payment has been duly demanded. *See* Ex. 6.

### G.      Litigation in the Southern District of New York.

188.    On December 22, 2010, Flame commenced an action against Industrial Carriers in the United States District Court for the Southern District of New York, seeking recognition of

the foreign judgment invoking the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. The Judgment was recognized by the United States District Court for the Southern District of New York on September 14, 2011. *See* Ex. 7.

189.     A judgment confirming and recognizing the foreign Judgment issued by the High Court of Justice in London, England in favor of Flame and against Industrial Carriers in the amount of $19,907,118.36 was entered on October 4, 2011. *See* Ex. 8.

### H.     Litigation in the Eastern District of Virginia.

190.     A copy of the October 4, 2011 judgment was registered in the United States District Court Eastern District of Virginia on October 11, 2013. *See* Ex. 9.

191.     On November 22, 2013, Flame initiated the 2013 Action.

192.     A bench trial commenced in the 2013 action on August 26, 2014, and concluded on September 4, 2014. The Court has not yet issued its Opinion and Order, except that it has Ordered the sale of the M/V CAPE VIEWER.

### FIRST CAUSE OF ACTION
#### (Alter Ego)

193.     Flame incorporates the allegations in paragraphs 1 through 192 as though fully set forth here.

194.     Many of the companies within the Palmira Group do not possess a bank account and have no appreciable assets; thus, many companies in the Palmira Group are either grossly undercapitalized or insolvent, or both.

195.     Defendants routinely siphon money out of one entity and into the possession of another entity or individual by making wire or cash transfers of funds without consideration.

196.    Defendants fail to observe corporate formalities and maintain proper corporate records. All decisions of the alter ego companies are made by Defendants Viktor Baranskiy, Sergei Baranskiy, Vladimir Tarasov, Andrey Kozminykh, and Artyom Mashutin, among others. No decisions are made at formal board meetings or by vote of the board of directors. Almost no board minutes are maintained by Defendants.

197.    Defendants have non-functioning officers. For instance, the Chief Financial Officer of the Palmira Group, Katerina Bobrenko, has no formal accounting or financial training, and has almost no decision-making power. She acts solely at the direction of Viktor Baranskiy.

198.    The Palmira Group is dominated by Viktor Baranskiy.

199.    Milestone is dominated by Sergei Baranskiy and Vladimir Tarasov.

200.    Phaeton is dominated by Andrey Kozminykh.

201.    Itiro is dominated by Artyom Mashutin.

202.    Edelweiss is dominated by Alexander Senchenko.

203.    Viktor Baranskiy, Sergei Baranskiy, Vladimir Tarasov, and Andrey Kozminykh were owners and/or directors of Industrial Carriers.

204.    Defendants routinely intermingle funds belonging to one entity with funds belonging to other alter ego entities and individuals.

205.    Defendants routinely conduct non-arm's length transactions. For instance, Milestone and Vista give interest-free "loans" to each other on a regular basis, without consideration or enforceable repayment terms. Edelweiss also makes interest-free loans to other Defendants.

206.    Defendants' fraudulent use of the corporate form to avoid creditors has resulted in injustice and fundamental unfairness to Flame, whose Judgment remains unpaid.

207.    Based on Defendants' fraudulent conduct, the Defendants should be considered a single economic unit with no corporate distinction between or among any of them, rendering each jointly and severally liable for the debts of the other, and all assets of Defendants together should be susceptible to attachment and/or restraint for the debts of Industrial Carriers.

208.    All of the named Defendants are properly considered as liable on the Judgment against Industrial Carriers in favor of Flame.

**SECOND CAUSE OF ACTION**
**(Fraudulent Transfer)**

209.    Flame incorporates the allegations in paragraphs 1 through 208 as though fully set forth here.

210.    Industrial Carriers was insolvent from a balance sheet perspective as early as June 30, 2008.

211.    In the months preceding Industrial Carriers' bankruptcy petition, Industrial Carriers siphoned $475 million to its subsidiary Weaver, and millions more to other subsidiaries and undisclosed beneficiaries.

212.    During Industrial Carriers' Greek bankruptcy, which was initiated by its October 15, 2008 bankruptcy petition, Industrial Carriers did not disclose the location of these funds to its creditors or the Greek bankruptcy court.

213.    Industrial Carriers divided its business among four successor companies: Vista, Milestone, Phaeton, and Itiro.

214.    In or around September and early October 2008, with the intent to hinder, delay, and defraud creditors, Industrial Carriers transferred assets to Vista, Milestone, Phaeton, and Itiro, and the owners of those companies, Viktor Baranskiy, Sergei Baranskiy, Vladimir Tarasov, Andrey Kozminykh, and Artyom Mashutin. Industrial Carriers used these assets to capitalize

Vista, Milestone, Phaeton, and Itiro, and enabled Defendants to weather the worst financial downturn in decades to become the highly profitable entities that exist today.

215.    In or around early October 2008, Industrial Carriers transferred $1,588,109 directly to Vista.

216.    In or around early October 2008, Industrial Carriers transferred the charter of the M/V HARMONY FALCON to Vista.

217.    Industrial Carriers made these transfers to Defendants while insolvent.

218.    Industrial Carriers made these transfers to Defendants with the intent to hinder, delay, and defraud creditors.

219.    Industrial Carriers made these transfers to Defendants without receiving consideration or value in return.

**WHEREFORE**, Plaintiff Flame S.A. prays:

A.    That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing, failing which Plaintiff will move for default on the principal amounts owed together with interest, costs, disbursements, and reasonable attorneys' fees;

B.    That Judgment be awarded in the amount of $19,907,118.36 in favor of Flame and against Defendants;

C.    That Defendants be deemed jointly and severally liable for Flame's Judgment;

D.    That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

E.    For such other, further, and different relief as the Court may deem just and proper in the premises.

FLAME S.A.


*Steven M. Stancliff*
Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com

- and -

William R. Bennett, III
Lauren B. Wilgus
Nicholas R. Tambone
*Attorneys for Plaintiff Flame S.A.*
*Previously Admitted Pro Hac Vice*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
Tel:  (212) 885-5000
Fax: (212) 885-5001
WBennett@BlankRome.com
LWilgus@BlankRome.com
NTambone@BlankRome.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of September, 2014, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such electronic filing to the following counsel of record:

Bryan K. Meals
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Tel: (757) 622-0100
Fax: (757) 622-4924
Email:   bmeals@daveybroganpc.com
*Attorney for Defendant Victor Baranskiy*

            */s/ Steven M. Stancliff*
            Steven M. Stancliff, VSB No. 73853
            *Attorneys for Plaintiff Flame S.A.*
            CRENSHAW, WARE & MARTIN, P.L.C.
            150 W. Main Street, Suite 1500
            Norfolk, VA 23510
            Tel:  (757) 623-3000
            Fax: (757) 623-5735
            sstancliff@cwm-law.com