Ifchor S. A., Lausanne +41 21 310 31 00 Page 1 12.03.2008 19:08:11
Doc-No. 4761580 12/MAR/2008 19:07 h



# IFCHOR S.A.

### SHIPBROKERS & CHARTERING AGENTS

Place Pépinet 1 - 1003 Lausanne, Switzerland
Tel. +41 21 3103131  Fax +41 21 3103100  e-mail: securities@ifchor.ch
Web: www.ifchor.com



# IFCHOR S.A.

SHIPBROKERS & CHARTERING AGENTS

Securities & FFA Division
PLACE PEPINET 1 - CH-1003 LAUSANNE, SWITZERLAND
TEL. + 41 21 310 3131 - TELEX 450351 IFC CH - TELEFAX + 41 21 310 3100
securities@ifchor.ch

**Private & Confidential**          Lausanne, 12/03/2008

**F.F.A. Confirmation of Trade** - Contract N. 8.3012.3.MeCi.TC/Ifchor

As per your instructions we have traded the following agreement on your behalf:

**Seller:** Flame S.A., Lugano Paradiso
**Buyer:** Industrial Carriers Inc., Marshall Islands
**Product:** BPI Average 4 Panamax TC Routes

| Months: | Quantity: |
|---|---|
| January 2009 | 31 days |
| February 2009 | 28 days |
| March 2009 | 31 days |
| April 2009 | 30 days |
| May 2009 | 31 days |
| June 2009 | 30 days |
| July 2009 | 31 days |
| August 2009 | 31 days |
| September 2009 | 30 days |
| October 2009 | 31 days |
| November 2009 | 30 days |
| December 2009 | <u>31 days</u> |
| **Total Quantity:** | 365 days |

**Settlement:** Monthly, against all BPI days of the month
**Price** $48,000 per day
Otherwise NEW FFABA2007 form
Many thanks to the parties for this trade and congratulations for having chosen Ifchor.
Best regards
          IFCHOR S.A.

JA 0240


EXHIBIT 1

12-1

# IFCHOR S.A.



SHIPBROKERS & CHARTERING AGENTS

SECURITIES & FFA DIVISION
PLACE PÉPINET 1 - CH-1003 LAUSANNE, SWITZERLAND
TEL. +41 21 310 3131 - TELEX 450351 IFC CH
FAX +41 21 310 3100 - e-mail: securities@ifchor.ch

## FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ("FFABA")

## FORWARD FREIGHT AGREEMENT FFABA 2007 TERMS

**Trade Ref:** 8.3012.3.MeCi.TC/Ifchor
**Contract Date:** Wednesday, March 12, 2008

The purpose of this confirmation is to state the terms and conditions of the forward freight swap agreement entered into between:

**Seller**
**Flame S.A., Lugano Paradiso**
Via San Salvatore 13
6902 Lugano - Paradiso
Tel N. + 41 91 985 2072
Fax N. + 41 91 980 9401
Email. info@flamesa.ch
P.I.C. Luca Ferrari

and

**Buyer**
**Industrial Carriers inc. Marshall Islands**
C/o
**Diamant & Co Ltd**
1, St., Bazarnaya Street
65014 Odessa
Tel N. + 380 482 345 001
Fax N. + 380 488 343 926
Email. chartering@diamant.com.ua
P.I.C. Michael Ivanov

The agreement between the parties set out in this Confirmation is a Confirmation pursuant to the Master Agreement.

In this Confirmation, **"Master Agreement"** has the meaning given to it in clause 9 if that clause applies, and if it does not, means any master agreement by which the Transaction entered into pursuant to and in accordance with this Confirmation is governed.

Until superseded by notice information in a subsequent Confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Confirmation may be properly served.

The terms of this Confirmation are as follows:

1) **Contract Route(s):**

1

Trade Ref: 8.3012.3.MeCi.TC/Ifchor

JA 0241

12-2

As per the arithmetical average of the **Routes 1A, 2A, 3A and 4** [Transatlantic TC Round Voyage, TC Trip Out, Transpacific TC Round Voyage, TC Trip Back] of the **Baltic Panamax Index** as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.

2) **Contract Rate:** USD 48'000.00 per day

3) **Contract Quantity:** 365 days (see below)

4) **Contract Months:** January 2009 (31 days) - February 2009 (28 days) - March 2009 (31 days) - April 2009 (30 days) - May 2009 (31 days) - June 2009 (30 days) - July 2009 (31 days) - August 2009 (31 days) - September 2009 (30 days) - October 2009 (31 days) - November 2009 (30 days) - **December 2009 (31 days)**

5) **Settlement Date:**

The last Baltic Exchange Index publication day of each Contract Month.

6) **Settlement Rate:**

(a) Each settlement rate (the "**Settlement Rate**") shall be the unweighted average of the rates for the Contract Route(s) published by the Baltic Exchange over each Settlement Period (defined as all Baltic Exchange Index publication days of each applicable Contract Month up to and including the Settlement Date).

(b) If for any reason the Baltic Exchange cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "**Panel**") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Exchange and its members and the FFABA and its members (the "**Indemnified Persons**") against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly or indirectly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

2

Trade Ref: 8.3012.3.MeCi.TC/Ifchor

JA 0242

12-3

7) **Settlement Sum:**

The "**Settlement Sum**" is the difference between the Contract Rate and the Settlement Rate multiplied by the Quantity by Contract Month. If the Settlement Rate is higher than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is lower than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

8) **Payment Procedure and Obligations:**

   (a)   Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or five (5) London business days after the Settlement Date and for this purpose a "**London business day**" means a day (other than a Saturday or Sunday) on which commercial banks are open for business in London) . The Settlement Sum will be deemed "paid" when it has been received into the bank account designated by the payee.

   (b)   Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The costs incurred in effecting payment shall be for the account of the payer. Payment may only be effected directly between the parties. The Settlement Sum shall be paid without any deduction or set-off except as permitted pursuant to the Master Agreement or otherwise as agreed by the Buyer and the Seller in writing.

9) **ISDA Master Agreement:**

   **This clause 9 applies only if either:**

   (i)    this Confirmation does not already constitute a Confirmation under an existing master agreement entered into by the parties to this Confirmation; or

   (ii)   the parties agree, either by virtue of clause 20 or otherwise, that the terms of the Master Agreement that is constituted by this clause are to replace any such existing master agreement.

   This Confirmation constitutes and incorporates by reference the provisions of the 1992 ISDA® Master Agreement (Multicurrency – Cross Border) (without Schedule) as if they were fully set out in this Confirmation and with only the following specific modifications and elections:

   (a)   Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

   (b)   Seller is the Calculation Agent except where the Seller is the Defaulting Party in which event Buyer is the Calculation Agent;

   (c)   the most current published set of ISDA® Commodity Definitions and ISDA® Definitions shall apply;

   (d)   Credit Event Upon Merger is applicable to both parties;

3

Trade Ref: 8.3012.3.MeCi.TC/Ifchor

JA 0243

12-4

(e) for the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) Automatic Early Termination will apply to both parties;

(g) the Termination Currency is United States dollars;

(h) the Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly;

(i) Local Business Day or banking day shall each refer to such a day in London;

(j) such other modifications as shall be necessary for such incorporation;

(k) references to "this Master Agreement", "this Agreement", "herein" and other like expressions shall be construed as being references to this Confirmation incorporating such provisions,

and this Confirmation, including such incorporated provisions, shall govern the Transaction referred to in this Confirmation and any other Transaction referred to in clauses 20 and 21.

The agreement constituted and incorporated by the incorporation of the provisions of the 1992 ISDA® Master Agreement (Multicurrency - Cross Border) (without Schedule) pursuant to this clause is referred to in this Confirmation as the "**Master Agreement**".

10) **Capacity and Good Standing:**

In line with and in addition to (as appropriate) the representations contained in Section 3 of the Master Agreement, each party represents to the other party that:

(a) it is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) it has the power to execute, deliver, and perform this Confirmation;

(c) all governmental and other consents that are required to have been obtained by it with respect to this Confirmation have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) in the event that a party to this Confirmation is a person organized under, domiciled in, or having its principal place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in § 1a(12) of the Commodity Exchange Act (7 U.S.C. § 1a(12), as amended).

11) **Telephone Recording:**

Each party consents to the recording of telephone conversations in connection with this Confirmation.

12) **Commission:**

Each of the parties agrees to pay brokers' commission to any broker (a "**Broker**") as agreed with any Broker.

13) **Non-Assignability:**

Except as provided in Section 7 of the Master Agreement, this Confirmation is non-assignable unless otherwise agreed in writing between the parties to this Confirmation.

14) **Principal To Principal:**

This Confirmation is a principal to principal agreement with settlement directly between the two parties. Both parties agree that **Ifchor SA** shall be under no obligation or liability in relation to this Confirmation. Both parties agree jointly and severally to indemnify and hold harmless **Ifchor SA** against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

15) **Law and Jurisdiction:**

This Confirmation shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Master Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

16) **Entire Agreement:**

This Confirmation and the Master Agreement set out the entire agreement and understanding of the parties with respect to the subject matter of this Confirmation and supersede all oral communication and prior writings with respect thereto.

17) **Payment Account Information:**

**For Seller:**
Bank address:

**For Buyer:**
Bank address:

HSBC BANK PLC
93, Akti Miaouli Street, Piraeus Branch, Greece
Swift Number : MIDLGRAA
Iban Number : GR67 0710 0010 0000 0106 6687 071
In favor of : WEAVER INVESTMENTS INC
ACC. 001█
Corr Bank : HSBC BANK USA
Swift : MRMDUS33
ACC : 000047791 of HSBC BANK PIRAEUS GREECE

5

Trade Ref: 8.3012.3.MeCl.TC/Ifchor

### 18) Third party rights

(a) Unless provided to the contrary in this Confirmation, a person who is not a party to this Confirmation has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Confirmation.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 6(d) in the case of any Indemnified Person and clause 14 in the case of any Broker.

(c) Notwithstanding any term of this Confirmation, the consent of any person who is not a party to this Confirmation is not required to rescind or vary this Confirmation.

### 19) Partial Invalidity

If, at any time, any provision of this Confirmation or the Master Agreement is or becomes illegal, invalid or unenforceable in any respect under any laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality or enforceability of the provision under the laws of any other jurisdiction will in any way be affected or impaired.

### 20) Inclusion of historical Confirmations under Master Agreement

(a) **Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 20 shall apply in accordance with its terms.**

(b) This clause 20 applies to this Confirmation and to every agreement entered into between the parties to this Confirmation (and no other persons) before the date of this Confirmation that is in respect of a forward freight swap, option or derivative:

　(i) that is expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms, the FFABA 2005 terms or the FFABA 2007 terms, with or without amendment; and

　(ii) in the case of a Confirmation that is stated to be subject to, or subject to substantially the same terms as, the FFABA 2007 terms that does not incorporate a clause substantially in the same form as this clause 20.

(c) Each agreement to which this clause 20 applies shall be treated as a Confirmation under the Master Agreement constituted pursuant to clause 9 as if such agreement had been entered into between the parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a Transaction to which this clause 20 applies, the provisions of the agreement constituting the Transaction to which this clause 20 applies will prevail for the purposes of the Transaction under such agreement.

6

Trade Ref: 8.3012.3.MeCl.TC/Ifchor

(e) This clause 20 shall not affect any rights or obligations of the parties under any Transaction accrued before the date of this Confirmation.

(f) This clause 20 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such Transaction.

21) **Inclusion of subsequent Confirmations under Master Agreement**

(a) **Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.**

(b) This clause 21 applies to every Confirmation that is in respect of a forward freight swap, option or derivative entered into between the parties to this Confirmation (and no other persons) subsequent to an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 9) having been entered into by them.

(c) Each such subsequent Confirmation shall constitute a Confirmation under the Master Agreement on the terms of clauses 20(c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 21 with appropriate and necessary modifications for such incorporation.

**Signed for the Seller by**                **Signed for the Buyer by**

........................................    ........................................
**Duly Authorized Signatory**               **Duly Authorized Signatory**

7

Trade Ref: 8.3012.3.MeCl.TC/Ifchor

JA 0247

12-8